## McDermott *v.* Chicago & N. W. Ry. Co.

*(Circuit Court, N. D. Iowa, E. D.   May 3, 1889.)*

REMOVAL OF CAUSES—LOCAL PREJUDICE.
> The right to a removal of a cause under the local prejudice clause of the act of August 13, 1888, § 2, is not dependent on the amount involved, there being no provision in relation thereto in such clause.

At Law.   On petition for removal because of prejudice and local influence.   Action by John McDermott against the Chicago & Northwestern Railway Company.

*Hubbard & Dawley* and *Henderson, Hurd, Daniels & Kiesel,* for petitioner.

SHIRAS, J.   The above-entitled cause is now pending in the district court of Clinton county, Iowa; the damages claimed therein being the sum of $499, the plaintiff being a citizen and resident of the state of Iowa, and the defendant a corporation created and organized under the laws of the state of Illinois.   A petition asking the removal of the action into this court on the ground of prejudice and local influence has been filed on behalf of the defendant, and the showing made in support thereof is sufficient to justify the granting the order of removal if the court can thus take jurisdiction of a cause involving no more than $499.   The case, therefore, presents the question whether, under the provisions of the act of August 13, 1888, the right of removal on ground of prejudice and local influence is dependent upon the amount involved in the controversy.

In case of *Fales* v. *Railway Co.*, 32 Fed. Rep. 673, I had occasion to construe the provisions of the act of March 3, 1887, and in so doing held that there was no limitation by way of amount upon the right of removal upon the ground of local influence and prejudice.   Since the hearing in that case the act of March 3, 1887, has been supplanted by that of August 13, 1888, passed for the purpose of freeing the act from the errors and mistakes that had been incorporated in the enrolled bill, and I have re-examined the question as presented by the phraseology found in the amended act, and in the light thrown thereon by the cases since reported. The decisions in the circuits are not in harmony.   The leading decision holding adversely to the right of removal unless the amount involved exceeds $2,000, is that rendered by Mr. Justice HARLAN in *Malone* v. *Railroad Co.*, 35 Fed. Rep. 625, a case pending in the circuit court for North Carolina.   It will be borne in mind that in section 2, art. 3, Const. U. S., which defines the extent of the judicial power that may be exercised by the courts of the United States, there is not found any limitation by way of amount.   When congress, therefore, provides by act for the exercise by the circuit courts of jurisdiction over controversies coming within the constitutional grant of power, such jurisdiction will exist as to all such controversies, regardless of the amount involved therein, unless the act providing for the exercise of the jurisdiction provides a

v.38F.no.7—34

limitation as to the sum in controversy. From time to time congress has affixed such a limitation, though varying the amount, to some of the controversies of which jurisdiction was conferred upon the circuit courts, but it is a fact that, beginning with the judiciary act of 1789, and coming down to and including the act of August 13, 1888, there has never been a time when the United States courts have not had jurisdiction of many classes of cases, irrespective of the amount involved therein. The fixing a limitation of amount as an element in the right to entertain jurisdiction of a cause has been and is merely a matter of expediency. In certain classes of cases a limitation has been fixed, in others it has not, as it has from time to time been deemed wise. Whenever it deems best, congress can increase the limiting amount, or may decrease it, or entirely abrogate it.

The first section of the act of 1888 defines the original jurisdiction of the circuit courts, and, so far as civil suits are concerned, the causes cognizable in these courts by proceedings originating therein are grouped under five classifications, to-wit: (1) Controversies arising under the constitution, laws, or treaties of the United States, and involving a sum in excess of $2,000; (2) controversies in which the United States is a party plaintiff, and involving a sum exceeding $2,000; (3) controversies between citizens of different states, involving a sum exceeding $2,000; (4) controversies between citizens of the same state, based upon claims to land arising under grants from different states; (5) controversies between citizens of a state and foreign states, citizens, or subjects, involving a sum in excess of $2,000. In these five classifications are found two general grounds of jurisdiction, i. e., subject-matter and diverse citizenship. Jurisdiction of cases arising under the first and fourth divisions is based upon the subject-matter, and courts of the United States have cognizance thereof regardless of the citizenship of the adversary parties. Cases in which the United States is the party plaintiff may be said to fall under the same category, as it is difficult to conceive of a case to which the United States would be plaintiff, but which would not arise under the constitution, laws, or treaties of the United States. Jurisdiction of causes embraced within the third and fifth divisions is based upon diverse citizenship. Thus we have defined the several classes of cases of which original jurisdiction is conferred upon the circuit courts by the first section of the act of 1888. The provisions thereof must be borne in mind in construing the second section, providing for the removal of causes, because reference is expressly made thereto. The first clause of the second section defines when the right of removal exists in cases arising under the constitution, laws, or treaties of the United States, and in effect it provides that the defendant or defendants, regardless of their residence, may remove any case of this nature provided it might have been brought orginally in the circuit court under the terms of the first section; that is to say, it must arise under the constitution, laws, or treaties of the United States, and involve over $2,000, exclusive of interest and costs. The second clause of the section defines when the right of removal exists in the class of cases wherein, under the provisions of the first section, orig-

inal jurisdiction is conferred upon the circuit courts by reason of diverse citizenship, including cases between a citizen of a state and foreign states, or the citizens or subjects thereof, the right of removal being conferred only upon non-resident defendants in cases involving over $2,000. The third clause deals with causes involving a separable controversy, and, like the two preceding clauses, express reference is therein made to the other provisions of the act in defining the classes of suits in which a removal may be had. It is clearly evident that congress intended that the first section and the first three clauses of the second section of the act should be read together, and by the terms thereof provision is made for the exercise of jurisdiction over the cases enumerated, either by suit originally in the United State courts, or by removal thereto from the state courts. In all cases coming within the provisions of the first section the plaintiff had the option, when about to bring suit, to begin originally in the United States court. Should he, however, choose to enter the suit in a state court, then the defendant or defendants may, under certain circumstances, invoke the jurisdiction of the United States court by removing the case thereto. If jurisdiction exists in the federal court by reason of the subject-matter, in that the cause arises under the constitution, laws, or treaties of the United States, and involves over $2,000, the defendant or defendants, regardless of their citizenship or residence, may remove the case into the United States court. If, however, jurisdiction of a given cause in the federal court exists only by reason of the diverse citizenship of the adversary parties, then, under the second clause, the right of removal is conferred only upon non-resident defendants. The limitations on the jurisdiction of the United States court found in the first section are, by reference thereto, incorporated into the named clauses of the second section, and for an obvious reason. The cases covered thereby are of the same nature, no new element entering into the same, and therefore the limitations placed by congress upon the exercise of original jurisdiction are repeated when providing for the exercise of jurisdiction by removal. If ordinarily it is best to limit the original jurisdiction to cases involving over $2,000, the same limitation should apply in like cases to acquiring jurisdiction by a removal of the case after its commencement in a state court. When we reach the fourth clause of the section, however, we find that it deals with a class of cases involving a new element, to-wit, the existence of prejudice and local influence, and when dealing with this element we should naturally expect a difference in the limitations placed upon the right to invoke the jurisdiction of the United States courts. We find in the clause no reference to the first section or preceding portions of the act. All such are carefully omitted. The declaration is that "where a suit is now pending, or may be hereafter brought, in any state court, in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant being such citizen of another state may remove such suit," etc. The definition of the class of cases intended to be embraced within this clause is given in the clause itself, without reference to, or limitation by, the provisions of the first section. The one class of cases to

which the clause is applicable is that of suits wherein is involved a controversy between a citizen of the state wherein suit is brought, and a defendant who is a citizen of another state. In such cases, if it is made to appear that, owing to prejudice or local influence, the defendant, who is sued out of the state of which he is a citizen, cannot obtain justice in the state courts, then such defendant may for this reason remove the suit at any time before final trial. If, in a given case, it is made to appear that a citizen of a state has been sued in a state of which he is not a citizen, and that, owing to prejudice and local influence, he cannot obtain justice in the state court, upon what grounds can the right of removal be refused to such a defendant, if he applies for such removal before the final trial in the cause? If all the requirements in the fourth clause contained are fully met, upon what theory can the court impose other conditions as prerequisites to granting the order of removal? It will not do to assume that congress intended to restrict the right of removal to such cases only as might have been brought originally in the United States circuit court under the provisions of the first section of the act, for since the adoption of the act of 1789, down to the date of the present statute, it has been and is the fact that jurisdiction by removal could be acquired by the circuit courts in cases which could not be originally brought in such courts. *Green* v. *Custard*, 23 How. 484; *City of Lexington* v. *Butler*, 14 Wall. 282; *Claflin* v. *Insurance Co.*, 110 U. S. 81, 3 Sup. Ct. Rep. 507. It never, therefore, has been the policy of the legislation on this subject to make the boundaries of jurisdiction original and jurisdiction by removal absolutely coincident, and no support can be found in past legislation for the assumption that congress intended to restrict the right of removal in all cases to such controversies as might have been originally brought in the federal courts.

In the case of *Malone* v. *Railroad Co.*, *supra*, it is said that, construing all the clauses of the act of 1887 together, it is clear that the limitation of amount applies to removals on the ground of prejudice or local influence. What is meant by this is that, if we import into the fourth clause provisions not found therein, we can sustain the conclusion that, to justify a removal on the ground of prejudice, the cause must involve an amount exceeding $2,000. Certainly, if we construe the fourth clause by its own terms only, no such restriction can be found therein stated. Can we rightfully assume that it must have been the intent of congress not to permit a removal of a cause for any reason unless it involved over $2,000, and then attempt to fit the language of the fourth clause to this assumed intent, by interpolating therein the provisions of other sections of the act which are not referred to in the clause itself? When the clause is susceptible of a reasonable construction as it stands, and full force can be given to all its provisions as written, resulting in a conclusion in harmony with the previous legislation upon the general subject, why resort to a rule of construction which requires the addition to a specific clause of the statute of provisions carefully repeated in other clauses, but omitted in the fourth clause? We have no ground for inferring that such omission was accidental or not intentional, and cer-

tainly, if congress intentionally omitted in the fourth clause all reference to the preceding section of the act, courts are not justified in holding that such reference was nevertheless intended, and that the clause of the act must be construed as though it contained that which congress had carefully excluded therefrom. As is said by the supreme court in *Lake County* v. *Rollins*, 9 Sup. Ct. Rep. 651:

"To get at the thought or meaning expressed in a statute, a contract, or a constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the legislature have the right to add to it or take from it. * * * So, also, where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction."

Comparing the structural form of the act of 1875 with that of the act of 1888, there will be found a radical difference therein. In the former act we find in both the first and second sections thereof a grouping together in one sentence in each section of the several classes of cases of which jurisdiction can be had, either originally or by removal, in the United States circuit courts under the terms of that act. In the act of 1888, on the contrary, the several clauses of the second section are distinct sentences, and the form thereof clearly indicates that each is to be so read and construed. Each clause is intended to indicate by its own terms, whether it is to be read in connection with any other section or clause of the act or not. The right of removal on the ground of prejudice was first conferred by the act of 1867. In the case of *Johnson* v. *Monell*, Woolw. 390, Mr. Justice MILLER, in construing this act, held that the act worked important changes in the law on this subject, and that in determining when a removal under it could be had its provisions were not limited by the previous statutes. In *Gaines* v. *Fuentes*, 92 U. S. 10, it was held that the act of 1867 "covered every possible case involving controversies between citizens of the state where the suit was brought and citizens of other states, if the matter in dispute, exclusive of costs, exceeded the sum of $500. * * * The only test was, did it involve a controversy between citizens of the state and citizens of other states, and did the matter in dispute exceed a specified amount?" There is nothing in the subsequent legislation on this subject that changes the rule of construction thus applied to the act of 1867. The act of 1875 did not deal with this particular class of cases. When, therefore, the act of 1888 was adopted, we are not justified in holding that the rule previously recognized was intended to be changed, unless such is the fair and natural import of the language used in the act. So far from the terms of that act indicating any such purpose it would seem as though congress had carefully framed the act so as to conform to the recognized construction of the previous statutes, and the only test now prescribed for determining whether the case belongs to the class that are

removable on the ground of prejudice is, does the suit involve a controversy between a citizen of the state wherein it is pending and a defendant who is a citizen of another state? It is urged that this construction opens the door to a removal, under the given circumstances, of a case from any state court regardless of the amount involved, and that such could not have been the intent of congress. In *Gaines* v. *Fuentes, supra,* the supreme court expressly holds that under the act of 1867 "it mattered not whether the suit was brought in a state court of limited or general jurisdiction." The abrogation of the previously existing limitation of $500 as the amount involved was a matter solely for congress to determine. There can be no question that this limitation of $500 is abrogated, and none other can be claimed to exist except that of $2,000. Can it be said that it was unwise for congress to enact that where a citizen of a state is sued in a state other than that of which he is a citizen, and he can make it appear that by reason of prejudice or local influence he cannot obtain justice in the state courts, he should have the right to remove the suit into the federal courts? The real purpose of such legislation is to afford parties an impartial tribunal, and the ground for the removal is not the amount in controversy, but the existence of local prejudice affecting the rights of a non-resident defendant. Whether a defendant, under such circumstances, should be compelled to remain in the state courts simply because the amount involved did not exceed a given sum was for congress to determine, and the construction of the act of congress cannot be controlled by what the court or counsel might deem to be wisdom or unwisdom in such legislative action. If, however, this line of argument is resorted to, certainly much can be advanced in support of the propriety of the rule that, where prejudice or local influence is shown to exist, a defendant who is sued in a state other than that whereof he is a citizen, should have the right to remove the cause, regardless of the amount involved.

The conclusion reached is that the statute of 1888 repeals the third clause of section 639 of the Revised Statutes, and enacts in lieu thereof the fourth clause of the second section of the act of 1888, and that under its provisions the amount involved is not an element in determining the removability of a suit. It follows that the petition for removal of this cause is granted, and the proper order will be entered.