**SONOBOND CORPORATION, Plaintiff,**

v.

**UTHE TECHNOLOGY, INC., Defendant.**

**UTHE TECHNOLOGY, INC., Counter-claim Plaintiff,**

v.

**SONOBOND CORPORATION and Aero-projects, Inc., Counterclaim Defendants.**

**Civ. No. 46772.**

United States District Court,
N. D. California.

March 6, 1970.

Order Denying Defendant's Petition to Reconsider and Request for Certification to Appeal April 9, 1970.

Uthe has infringed and continues to infringe Sonobond's Patent No. 2,949,119, "Method and Apparatus Employing Vibratory Energy for Bonding Metals." In its answer and counterclaim Uthe alleges the patent is invalid and unenforceable because it should not have been issued and because Sonobond is guilty of patent misuse and violations of the Federal Antitrust Laws.

Uthe moves for a summary judgment to the effect that Sonobond is guilty of misuse of its patent thereby rendering that patent unenforceable. In the alternative, Uthe moves for separate trials. In the alternative, Uthe moves under Local Rule 103(f) to defer any ruling on further discovery and time required by Uthe to prepare for pretrial pending this Court's decision on Uthe's other two motions; in the alternative, Uthe seeks an additional 120 days in which to complete discovery. Sonobond moves for summary judgment to the effect that Uthe has actively induced infringement of the patent and that it contributorily infringed the patent.

Richard J. Archer, Hugh H. Redford, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for plaintiff and counterclaim defendants; Richard Russell Wolfe, Wolfe, Hubbard, Leydig, Voit & Osann, Chicago, Ill., on the brief.

Charles E. Townsend, Jr., Paul W. Vapnek, Townsend & Townsend, George C. Limbach, Limbach & Limbach, San Francisco, Cal., for defendant and counterclaim plaintiff.

ORDER DENYING MOTIONS OF PLAINTIFF AND DEFENDANT FOR SUMMARY JUDGMENT AND MOTION OF DEFENDANT FOR A SEPARATE TRIAL

GERALD S. LEVIN, District Judge.

*Preliminary Statement*

Sonobond Corporation (hereinafter known as "Sonobond") has brought suit against Uthe Technology, Inc. (hereinafter known as "Uthe") contending that

*Uthe's Motion for Summary Judgment*

Uthe contends that certain implied licenses of Sonobond constitute patent misuse. Uthe alleges that these licenses make the purchase of unpatented components from Sonobond a condition to obtaining an implied license under the patent. Sonobond disputes this in its entirety and claims that any basis for Uthe's assertion is grounded on facts occurring before Sonobond entered into its present written licensing program (mid-1967). Sonobond claims that prior to mid-1967, it was not in the licensing business but simply manufactured and sold the combination which was intended for use in the practice of the patented process. Sonobond contends that it imposed no conditions upon users regarding the purchase of any individual components or any materials or supplies. The record discloses genuine issues of material facts which must be resolved in deciding whether Sonobond had an implied licensing scheme which constituted

a patent misuse and whether that scheme still persists.

Uthe also claims that Sonobond's express licenses constitute a patent misuse. Uthe has submitted copies of these licenses *in camera*. These licenses state that they are for a period commencing on the date of the signing and ending, unless sooner terminated as thereinafter provided, on the date of expiration of the patent. Since there is no evidence tending to show that these licenses have been terminated it can be presumed that they exist and are still in effect.

These licenses give the licensee a non-exclusive, nonassignable license and in consideration the licensee is required to pay Sonobond a license fee. This license fee is to be paid for each apparatus sold, computed on the basis of 6% of the net selling price of the license fee determining structure, or $50.00, whichever is greater. "Net selling price" is defined to be the gross amount received for each license fee determining structure sold less any freight or other transportation charges, sales or use taxes, or customary quantity or trade discounts. The licenses provide that where the licensee purchases components of the license fee determining structure from a manufacturing licensee of Sonobond, who certifies to the licensee that a license fee has already been paid to Sonobond, or purchases components directly from Sonobond, the licensee may eliminate said components from computation of the license fees due. The amount of royalty which a licensee of Sonobond directly or indirectly pays when he buys unpatented components could vary depending upon whether he made them himself or bought them ultimately from Sonobond, a licensee of Sonobond, or a non-licensed vendor.

■■ In general, a patent owner can be guilty of misuse of his patent when he extends his patent monopoly to unpat-

ented items. This doctrine was enunciated in Carbice Corporation of America v. American Patents Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819 (1931), and Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396 (1944). In these and other cases the rule has been stated that the owner of a patented combination patent cannot require as a condition for granting a license that unpatented components or materials be purchased only from the licensor.[1]

In Aro Mfg. Co. v. Convertible Top Co., 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964), the Supreme Court in light of 35 U.S.C. § 271 stated that a repair, which would otherwise not be an infringement or contributory infringement if made with respect to a licensed structure, would constitute contributory infringement where the structure itself is unlicensed and the requisite knowledge is present. Although this case and 35 U.S.C. § 271 provide a patent owner with a cause of action for contributory infringement against a person who sells an unpatented component knowing it will be used to infringe the patent, they did not abrogate the doctrine of patent misuse.

■■ In order to establish misuse of a patent a substantial lessening of competition or other damages need not be shown. Morton Salt Co. v. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 315 U.S. 788, 86 L.Ed. 363 (1942), reh. den. 315 U.S. 826, 62 S.Ct. 620, 86 L.Ed. 1222 (1942); Berlenbach v. Anderson & Thompson Ski Co., 329 F.2d 782 (9th Cir. 1964), cert. den. 379 U.S. 830, 85 S.Ct. 60, 13 L.Ed.2d 39 (1964). Thus the mere fact that Sonobond's sales of its components have decreased does not prevent a court from finding patent misuse if it is otherwise shown.

In Electric Pipe Line v. Fluid Systems, 231 F.2d 370, 372 (2d Cir. 1956),

---

1. Cf. United States Gypsum Company v. National Gypsum Company, 387 F.2d 799, 802 (7th Cir. 1967), cert. den. 390 U.S. 988, 88 S.Ct. 1184, 19 L.Ed.2d 1292 (1968), where the court stated that to show misuse "would require at least a finding that plaintiff restricts licensing for the purpose of compelling the use of its own tape."

the court held that where the owner of a combination patent designs the installation and guarantees its performance, it is not an unreasonable use of the patent to insist that the components of the patent system be obtained from it. This case is distinguishable from the present one because no such guarantees are shown here.

It does not appear from the present record that the effect of Sonobond's licenses is to induce the licensees to purchase component parts from Sonobond. Whether or not licensees of Sonobond purchase component parts from Sonobond, the licensor, depends in a great measure upon price differentials established by the licensor and third parties who may market such parts. Genuine issues of material fact must be considered in order to determine whether or not the licenses constitute patent misuse.[2]

Uthe bases this motion solely upon its alleged affirmative defense of patent misuse. No motion has been made with respect to its alleged affirmative defenses of patent invalidity and antitrust violation. Uthe's motion for summary judgment is denied.

*Sonobond's Motion for Summary Judgment*

The complaint charges Uthe with infringement of plaintiff's patent rights by (1) selling ultrasonic or vibratory welding equipment embodying the patent invention; (2) actively inducing infringement of the claims of Sonobond's patent by others; (3) contributory infringement of said patent by selling components of ultrasonic or vibratory welding equipment.

Sonobond's patent covers a method and apparatus employing vibratory energy for bonding metals. Uthe manufactures and sells two unpatented components of this patented combination—power supplies and transducers. Uthe says the patented combination is comprised of more components than the two it produces. Sonobond contends that its patent claim No. 27 covers a combination of a frequency converter and transducer-coupling system which includes the components that Uthe alleges constitutes the patented combination. It appears from the language of this claim that the combination comprises three elements: (1) a force applying member, (2) a transducer means, and (3) a frequency converter or power supply means.

Although Sonobond offers affidavits and depositions for the purpose of showing that Uthe has infringed Sonobond's patent, these documents also show that Uthe's equipment has been used or may be used in various types of applications, such as wire bonding, stitch bonding, flip-chip bonding, micromachining, soldering and possibly sealing. From such documents it cannot be readily determined whether Uthe is liable for infringement and, if so, the extent of Sonobond's damages. It is also not apparent whether the ultrasonic welding done by Uthe's equipment follows the theory or practice claimed by Sonobond in its patent. It is quite likely that expert testimony will have to be introduced in order to resolve these genuine issues of material fact. The necessity of expert testimony to translate and interpret material, technical facts is a justifiable ground for denying summary judgment. Rains v. Cascade Industries, Inc., 402 F.2d 241 (3d Cir. 1968); Ortman v. Stanray Corporation, 371 F.2d 154 (7th Cir. 1967); and Technograph Printed Circuits v. Methode Elect., Inc., 356 F.2d 442 (7th Cir. 1966), cert. den. 384 U.S.

---

2. Barber Asphalt Corp. v. La Fera Grecco Constr. Co., 116 F.2d 211 (3d Cir. 1940), and Dehydrators, Limited v. Petrolite Corporation, 117 F.2d 183 (9th Cir. 1941), are distinguishable from the present case because here it is much easier for the licensee to estimate what his net selling price will be and thereby determine how much it will ultimately cost him in royalties depending upon the party from whom he obtains the components. Any uncertainty created by the Sonobond licenses is *de minimus* when compared with the uncertainty in these two cases.

950, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966).

A patent owner may not maintain an infringement or contributory infringement suit where he has not purged himself of misuse of the patent. Berlenbach v. Anderson & Thompson Ski Co., supra; Hensley Equipment Company v. Esco Corporation, 383 F.2d 252 (5th Cir. 1967); and Dr. Salsbury's Laboratories v. I. D. Russell Co. Lab., 212 F.2d 414 (8th Cir. 1954). Once a plaintiff has been found to have misused his patent he is denied relief for infringement until he can show he has wholly abandoned his improper practices and that their consequences have been fully dissipated. McCullough Tool Company v. Well Surveys, Inc., 343 F.2d 381 (10th Cir. 1965); and Preformed Line Products Co. v. Tanner Mfg. Co., 328 F.2d 265 (6th Cir. 1964), cert. den. 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964). Thus if patent misuse is shown then it is a defense to patent infringement during the period of misuse.

It is well settled that an invalid patent is a defense to an action for infringement. Wham-O Mfg. Co. v. Paradise Manufacturing Co., 327 F.2d 748 (9th Cir. 1964); Dresser Industries, Inc. v. Smith-Blair, Inc., 322 F.2d 878 (9th Cir. 1963); and Coast Metals, Inc. v. Wall Colmonoy Corporation, 315 F.2d 416 (9th Cir. 1963).

In general, a summary judgment should not be granted on an issue, the resolution of which is dependent upon another issue which itself raises genuine questions of material fact. Metal Coating Corp. v. Baker Manufacturing Co., 227 F.Supp. 529 (W.D.Wisc.1964) (patent infringement case); Kollsman Instrument Corp. v. Astek Instrument Corp., 225 F.Supp. 534 (S.D.N.Y.1964) (patent infringement case); Saylor v. Fayette R. Plumb, Inc., 30 F.R.D. 176 (E.D.Pa.1962) (patent infringement case); and 6 Moore's Federal Practice ¶ 56.20 [3.–2], p. 2754.

A summary judgment holding Uthe liable for infringement of Sono-

bond's patent cannot be granted until the above-mentioned, genuine issues of material fact are resolved. Consequently, Sonobond's motion for summary judgment is denied.

*Uthe's Motion for Attorneys' Fees*

Uthe moves to invoke the provisions of F.R.Civ.P. 56(g) in order to be awarded reasonable attorney's fees. Uthe claims that in light of the numerous papers filed of record concerning the enormous complexity of the technology, Sonobond could not have been serious in its motion for summary judgment. However, it does not appear that the affidavits submitted by Sonobond pursuant to Rule 56 were presented in bad faith or solely for the purpose of delay as specified by Rule 56(g). Uthe's motion for attorneys' fees is denied.

*Uthe's Motion for a Separate Trial*

Uthe has, in the alternative, moved for a separate trial under F.R.Civ.P. 42 in respect to the issues of patent misuse and antitrust violation and to the issues of patent infringement and validity, because a decision in favor of Uthe on the former issues could render the latter issues moot. Sonobond urges the denial of this motion because otherwise it would impose undue inconveniences and expenses as Sonobond's personnel are located in Pennsylvania and its patent counsel in Chicago.

Courts have cautioned against piecemeal adjudication and have urged the general advisability of a trial on all the issues of patent validity, infringement and misuse except where such a consolidation would be unduly burdensome. Gray Tool Co. v. Humble Oil & Refining Co., 186 F.2d 365 (5th Cir. 1951); Westinghouse Elec. Corp. v. Bulldog Electric Prod. Co., 179 F.2d 139 (4th Cir. 1950); Paul E. Hawkinson Co. v. Dennis, 166 F.2d 61 (5th Cir. 1948).

Uthe's motion for a separate trial is denied.

*Uthe's Motion for Additional Time in which to Complete Discovery*

Uthe is granted an additional 120 days from the date of this order to complete discovery.

It is so ordered.

ORDER DENYING DEFENDANT'S PETITION TO RECONSIDER AND REQUEST FOR CERTIFICATION TO APPEAL

Uthe sets forth the issue before the court in alternative form as follows:

"In order to find misuse of a combination patent, is it necessary to make a finding that the plaintiff restricted licensing for the purpose of compelling or inducing use of its unpatented components, or, to the contrary, is *any* conditioning of a combination patent license to the purchase or sale of an unpatented component a *per se* violation of the antitrust laws such as to constitute patent misuse?"

It appears that the answer of Uthe to the issue set forth above was given in Uthe's conclusion that:

"It is respectfully submitted that the majority decision in *White Motor* [White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738] makes clear the Supreme Court view that any restrictive licensing such as was involved in *Mercoid*, and such as is involved in this case, is a *per se* violation of the antitrust law and patent misuse. Specifically, no intention of the patent owner is required to be inquired into as the act itself is sufficient."

Apparently Uthe proceeds upon the assumption that this court has determined that intent or purpose must be shown in order to find a *per se* violation of the antitrust laws so as to constitute patent misuse. The court has not made such a determination. The court is of the opinion that under the circumstances involved in this case, until facts are established which require or induce licensees of Sonobond to purchase from Sonobond unpatented components which are parts of Sonobond's patent combination, or other products, a court has not sufficient factual basis upon which to hold that as a matter of law there has been such a *per se* violation.

This court is not of the opinion that an interlocutory appeal from the court's order of March 6, 1970, "may materially advance the ultimate termination of the litigation" as required by 28 U.S.C. § 1292(b). Furthermore, "federal law expresses the policy against piecemeal appeals". Switzerland Cheese Assn., Inc. v. Horne's Market, 385 U.S. 23, 24, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966).

Accordingly it seems entirely inappropriate for this court to amend its order of March 6, 1970, to include a certification allowing Uthe to apply to the Court of Appeals for the Ninth Circuit to permit an appeal to be taken from such order.

Uthe's petition for reconsideration or for a certification for an interlocutory appeal is hereby denied.